**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EDWARD DONALD BURLEY,

        *Plaintiff*,

v.

RHONDA RIDER,

        *Defendant*.
_____/

CASE NO. 2:17-cv-10110

DISTRICT JUDGE GEORGE CARAM STEEH
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REOPEN CLAIMS (R. 11)

### I.  RECOMMENDATION

This prisoner civil rights case returns after a sojourn in the Western District of Michigan. While there, the court pared down the case to a single claim against Defendant Rhonda Rider, dismissing all other claims. Plaintiff's present motion seeks to reopen many of the claims that had been put to rest. (R. 11.) Because he has failed to demonstrate any error in the earlier adjudication of his now dismissed claims, I suggest that his motion fails and **RECOMMEND** that it be **DENIED**.

### II.  REPORT

**A.  Facts and Procedural History**

This case has ping-ponged between the Eastern and Western Districts of Michigan. It began here on January 12, 2017, when Plaintiff sued various Michigan Department of Corrections (MDOC) employees alleging a host of statutory, constitutional, and other

1

claims. (R. 1.)[1] Soon after, the case was transferred to the Western District. (R. 4.) There, Magistrate Judge Ray Kent issued a Report, which was ultimately adopted, recommending that all the claims but one be dismissed: an Eighth Amendment claim that "Rider was deliberately indifferent to plaintiff's serious medical needs by providing inaccurate medical records with respect to plaintiff's claim for a health-related accommodation." (W.D. Mich. Case No. 17-10888, R. 24, PageID.164.) No other claims had been properly exhausted, the Court found. (*Id.*, PageID.155, 164; W.D. Mich. Case No. 17-10888, R. 28, PageID.180.) The only grievance Plaintiff filed—"Grievance 147"—failed to exhaust any claims against the named defendants because it did not name any of them. (W.D. Mich. Case No. 17-10888, R. 24, PageID.161.) The Magistrate Judge further noted that no claims related to Grievance 147 could be lodged against Defendant Rider because her only role was investigating that grievance. (*Id.*)

---

[1] The Report and Recommendation from the Western District in this case described the parties and claims as follows:

> Plaintiff's complaint named the following defendants employed at the Lakeland Correctional Facility (LCF): Registered Nurse (RN) Rhonda Rider; Grievance Coordinator Scott Cline; Counselor Bradley; and Americans with Disabilities Act (ADA) Coordinator Joanne Bridgford . . . . Plaintiff lists the following causes of action against defendants: a claim under the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996); conspiracy to deprive a person of a civil right; defamation and libel by a state official; violation of the ADA, 42 U.S.C. § 12101, *et seq.*; violation of the Rehabilitation Act (RA), 29 U.S.C. § 794, *et seq.*; Eighth Amendment deliberate indifference to medical needs; First Amendment denial of access to the courts; First Amendment "interference by state actors with my right to freedom of association with other persons;" and an apparent Eighth Amendment claim against "state actors for placing me in danger and failing to protect me from an unreasonable and substantial risk of harm to my person."

(W.D. Mich. Case No. 17-10888, R. 24, PageID.155-56.)

2

During the investigation of Grievance 147, Defendant Rider sent a note to Defendant Cline, the grievance coordinator, stating:

> On 2/4/14 the grievant was seen by the provider at another facility. The grievant had been noted using the regular phone with the receiver to his ear at a normal phone receiver volume. This would indicate that he did not demonstrate need for special hearing devices. The grievant was offered to undergo an evoked auditory/brainstem response test on 1/2/12 which he declined. This test would have confirmed his reported hearing deficit. The grievant [*sic*] accommodations were discontinued during the visit on 2/4/14.

(*Id.* (citation omitted).) That note was at the heart of the surviving constitutional claim against Rider. Like the others, this claim was not exhausted; it withstood dismissal only because Plaintiff produced a grievance (containing the constitutional issue) he claimed to have been prevented from filing. That grievance stated:

> This complaint is against Rhonda Rider RN13 where she released medical information from my medical files without my approval or authorization. She improperly released confidential information from my medical files to a third party (S. Cline) in violation of PD 03.04.100, Health Services, eff. 2/01/15. Policy states that "All health care interviews, examinations, procedures, and other encounters shall be conducted in a setting that provides for the prisoner's privacy, consistent with custody and security controls." See § K. Ms. Rider violated the Federal HIPAA laws where she released sensitive medical information relating to my hearing impairment. The information she released was inaccurate in that she reported "On 2/4/14 the grievant was seen by the provider at another facility. The grievant had been noted using the regular phone with the receiver to his ear at a normal phone receiver volume." This is factually inaccurate and she did nothing to assure the accuracy of the misreported information—she has demonstrated deliberate indifference towards my serious medical condition. She offered to release further information to S. Cline from my medical files without my expressed or implied consent, even where I never was asked to sign a "Patient's Authorization for Disclosure of Health Information," form CHJ-121. I ask that she be counseled not to release any further information from my files without my expressed authorization, and disciplined accord [*sic*] to policy.

(W.D. Mich. Case No. 17-10888, R. 19, PageID.139 (emphasis removed).)

The Magistrate Judge found a genuine issue of material fact as to whether Plaintiff was prevented from submitting the grievance. (W.D. Mich. Case No. 17-10888, R. 24, PageID.162 (citing *Ross v. Blake*, 136 S. Ct. 180, 1858-59 (2016).) Regarding the claim under the Health Insurance Portability and Accountability Act (HIPAA), the Magistrate Judge determined that it failed because HIPAA did not confer private rights of action. (*Id.*, PageID.163.) Plaintiff's objections to the Report were overruled and his subsequent motion for reconsideration was denied. (W.D. Mich. Case No. 17-10888, R. 28, 66.)

After the case returned to this District, Plaintiff filed the present motion to reopen the dismissed claims under Fed. R. Civ. P. 54(b). (R. 11.) The motion contends that the previous Report failed to address all of his claims, looking only at deliberate indifference and HIPAA. (*Id.*, PageID.55.) The motion also purports to "adopt[] and incorporate[] the arguments advanced in his Brief in Support, Objections to R&R, Burley Declaration." (*Id.*) Defendant has responded and Plaintiff has replied. (R. 14, 20.)[2] The matter is now ready for resolution.

**B.     Law and Analysis**

    **1.     Standards for Reopening Interlocutory Orders**

Plaintiff's motion asks the Court to revisit a prior interlocutory order in this case.

---

[2] Plaintiff actually filed two replies. While the local rules do not provide for multiple reply briefs, I will address the latter because it is on point and more developed. E.D. Mich. LR 7.1. The first largely discusses a motion for relief from judgment under Fed. R. Civ. P. 60. (R. 17.) Apparently, he is referring to the Rule 60(a) motion he filed in the Western District. (W.D. Mich. Case No. 17-10888, R. 72.) Even Plaintiff appears to agree, however, that the Rule 60(a) motion is not before this Court (and although later he suggests it is, he appears to have intended to reference the Rule 54 motion instead). (R. 17, PageID.93-94.) In any event, Rule 60 motions "are only applicable to final orders or judgments," which have not entered here. *Brown v. Amsouth Bank*, No. 11-cv-3022, 2014 WL 12657650, at *2 (W.D. Tenn. Sept. 30, 2014) (citation omitted).

Courts have long had power to grant this relief. "By the traditional rule of the common law a judgment remained within the control of the court of rendition, with power to alter it in form or substance, until the lapse of the term of court at which it was rendered." Robert Wyness Millar, *Civil Procedure of the Trial Court in Historical Perspective*, 385 (1952). That inherent authority remains today. *See Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. . . . A district court may modify, or even rescind, such interlocutory orders.").

"[A]dditional support" for this power comes from Fed. R. Civ. P. 54(b). *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). That Rule states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez*, 89 F. App'x at 959; *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (citing Rule 54(b) and noting that "the Court has recognized

5

that a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case").

The traditional "justification for reconsidering interlocutory orders" is that "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. One court defined "manifest injustice" in these circumstances as "'[a]n error in the trial court that is direct, obvious, and observable,' . . . 'apparent to the point of being indisputable.'" *Ashraf v. Adventist Health Sys./Sun-belt, Inc.*, No. 2:17-cv-2839, 2018 WL 4431381, at *3 (W.D. Tenn. Sept. 17, 2018) (citations omitted). Some courts in this Circuit have held that "[m]otions to revise 'may not be used to relitigate old matters.'" *Glass v. Northwest Airlines, Inc.*, 798 F. Supp. 2d 902, 907 (W.D. Tenn. 2011) (citation omitted); *cf. Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) (Friendly, J.) (discussing the related "law of the case" doctrine and noting that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").

These basic principles apply when, as here, a different judge entered the interlocutory order at issue. *See McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) ("[T]he law of the case doctrine, which provides that courts should refrain from reopening issues decided in earlier stages of the same litigation . . . applies when a case is transferred from one district court to another," but it does not apply if the transferee court determines that the prior decision is clearly wrong.); 18B Alan Wright & Arthur R. Miller, *Federal Prac. & Proc.: Jurisdiction*, § 4478.1 (2d ed.) ("The basic themes that apply to

6

same-judge reconsideration carry forward to situations in which one trial-court judge is asked to reconsider a ruling by another trial-court judge."); *Propriety of federal district judge's overruling or reconsidering decision or order previously made in same case by another district judge*, 20 A.L.R. 13, § 1 (2019 update) ("[A]n accurate statement of the general rule appears to be that normally one federal district judge should not overrule or reconsider a decision or order of another federal district judge in the same case, but the second judge is not absolutely barred from reconsidering the matter, and he may re-examine the decision where there are good reasons to do so."). For many of the same reasons as above, "[g]enerally speaking, a successor judge should not reconsider the decision of a transferor judge at the same hierarchical level of the judiciary when a case is transferred." *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). Moreover, in these circumstances there exists the "relative unseemliness of a court's altering a legal ruling as to the same litigants" due only to "a change in the membership of the tribunal." *Zdanok*, 327 F.2d at 953. Thus, although a predecessor judge's previous rulings can be revisited, the succeeding judge should not do "merely because he has a different view of the law or facts from the first judge." *Brengettcy*, 423 F.3d at 680 (citing *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997)).

### 2. Application

In this case, Plaintiff argues the prior decision in the Western District should be reopened because he "filed seven (7) claims of constitutional magnitude against the named Defendants, however, the court hastily and unfairly adjudicated only two (2) claims (Deliberate Indifference, HIPAA clams [*sic*]). . . . There remains [*sic*] unresolved claims

in this Court." (R. 11, PageID.55.) Plaintiff relies on earlier filings to provide the substance of his contention. Further, in his reply brief he reiterates that claims remain unadjudicated. (R. 20, PageID.105.) He also elaborates that when the Magistrate Judge issued his Report, Plaintiff lacked access to the legal files. (R. 20, PageID.104.) According to Plaintiff, the District Judge "completely ignored the fact that I raised an objection as not having access" to the legal files. (*Id.*, PageID.105.) He invokes the "clear error" and "manifest injustice" rationales for reopening the claims. (R. 11, PageID.58 (citing *Rodriguez*, 89 F. App'x at 959); R. 20, PageID.107.)

It is difficult to parse Plaintiff's argument because he attempts to incorporate prior filings that, except for his objections to the Report, are only tangentially related to the previous order dismissing most of his claims. More confusing still is that his present argument—*i.e.*, that the court ignored multiple claims—does not appear in his objections to the Report (nor could it have, of course, appeared in his pre-Report brief, which he also attempts to incorporate). And his objections merely mentioned his lack of access to his legal files—but this was introductory information and not one of his numbered objections. (W.D. Mich. Case No. 17-10888, R. 25.) Instead, his two objections were that (1) the Report erroneously found that Defendant Rider was an investigator of Grievance 147 (the only grievance he filed), and (2) that the Report erred by recommending *sua sponte* dismissal of Defendant Bradley "without first holding a bench trial to determine exhaustion as to Arus Bradley." (*Id.*, PageID.166, 168 (emphasis removed).) Plaintiff never requested a time extension due to the alleged lack of access. For her part, Defendant here does not

relitigate Plaintiff's objections to the Report. (R. 14.) Rather, she focuses on the short argument in his current motion claiming that the court disregarded various claims.

To be thorough, I will treat the following claims of error as arguments Plaintiff is now trying to press: (1) he had no access to his legal materials when the Report issued; (2) Defendant Rider should not have been considered an investigator of Grievance 147; (3) Defendant Bradley should not have been dismissed; and (4) the previous dismissal order ignored multiple claims. For the reasons that follow, I suggest that none of these arguments provides grounds to reopen the prior decision as none amounts to a clear error let alone a manifest injustice.

Regarding the first argument, as an initial matter I fail to see how Plaintiff's alleged inability to access legal materials could constitute an objection to the Report. Plaintiff was not arguing that he was without his materials when he submitted his earlier brief before the Report issued. And the Report could not be erroneous simply because, at the moment it was issued or shortly after, Plaintiff lacked his papers. Perhaps his statements about the legal materials could form an independent claim, but Plaintiff did not attempt to amend his complaint or file a new case. Or maybe his assertion would have led the court to extend the objections period—but, again, Plaintiff never asked for that extension and instead submitted timely objections. (W.D. Mich. Case No. 17-10888, R. 28, PageID.181.)

Moreover, Plaintiff has failed to allege or explain how the denial of his legal materials prejudiced him. He does not say, for example, what arguments he had to forego or how the arguments he was able to make suffered. These failures would be fatal if this were an independent claim. In that case, he would need to show an actual injury, meaning

9

that the blocked access to the court prevented him from bringing a non-frivolous claim or argument. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Consequently, I cannot conclude that this argument reveals any error or manifest injustice that could be remedied by reopening the prior decision.

Regarding his second argument, he contends that the Report inaccurately characterized Defendant Rider as an investigator. (W.D. Mich. Case No. 17-10888, R. 25, PageID.166-67.) In his objections to the Report, he stated that "defendant Rider was not authorized under policy to even release any medical information from my file — let alone inaccurate information with an offer to release further information." (*Id.*, PageID.167.) Even if Plaintiff's statement were accurate, it's unclear why this would mean that Defendant was *not* an investigator.

But that's beside the point: the larger problem with Plaintiff's argument is that, as the previous Report recognized, Grievance 147 failed to name Rider and therefore did not exhaust any claims against her. (W.D. Mich. Case No. 17-10888, R. 24, PageID.161.) To properly exhaust administrative remedies under 42 U.S.C. § 1997e(a), a prisoner such as Plaintiff must comply with the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 202 (2007). Here, that meant taking the grievance through three steps. MDOC Policy Directive (PD) 03.02.130(E) (eff. 7/9/2007). At the first step, the prisoner must include "[d]ates, times, places and names of all those involved in the issue being grieved." MDOC PD 03.02.130(R). Thus, a grievance exhausts administrative remedies only as to the individuals and issues named in the grievance. *See Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002).

10

In his step-one form for Grievance 147, Plaintiff named only "Arus Marvin." (W.D. Mich. Case No. 17-10888, R. 16, PageID.118.) Plaintiff attempted to add Defendant Rider in the step-two form, (*Id.*, PageID.117), but the late addition was insufficient to properly exhaust the complaint against her. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under [MDOC's] procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their *initial* grievance." (emphasis added, citation omitted)). That's why the previous Report concluded—*correctly*—that Grievance 147 failed to exhaust Plaintiff's administrative remedies against Defendant Rider. (*Id.*, PageID.161.) As such, regardless of whether she was an investigator, the claim against her failed. The earlier Report contains no error regarding this matter.

Plaintiff's third argument is that he mistakenly referenced "Arus Marvin" in Grievance 147 when he meant to name Defendant Bradley. (W.D. Mich. Case No. 17-10888, R. 25, PageID.168.) According to Plaintiff, the court should have held a bench trial to determine the disputed issue of fact regarding exhaustion. (*Id.*) It was only after the Report was issued in the Western District, however (but before it was adopted), that Plaintiff filed a motion for a bench trial arguing that he had "intended on naming Arus Bradley" in the Grievance. (W.D. Mich. Case No. 17-10888, R.27, PageID.175.) He further claimed that because the prison officials did not deny Grievance 147 on the basis that it failed to name the defendants, the Court could not base its decision on that failure. (*Id.*) In other words, they waived the defense. The legal basis for the argument came from *Reed-Bey*, where the Sixth Circuit held that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so

11

as a general rule will we." 603 F.3d 322, 325 (6th Cir. 2010). Here, Plaintiff claimed, the prison officials "did specifically make a merits decision as it related to "Arus Bradley," so they could not now claim the Grievance failed for naming him (or apparently the other defendants, although it's unclear whether Plaintiff meant to include them in the argument). (W.D. Mich. Case No. 17-10888, R. 27, PageID.176.) The Western District lumped the motion for the bench trial together with Plaintiff's objections to the Report and rejected them all, although it did not specifically address Plaintiff's motion. (W.D. Mich. Case No. 17-10888, R. 28.)

Plaintiff's argument fails for two reasons. First, even with the generous assumption that Grievance 147 could be deemed exhausted if Plaintiff proved his intended (but unnamed) target was Defendant Bradley, Plaintiff still falls short. To get a bench trial on exhaustion, he needs to raise a genuine issue of material fact. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015); *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 787 (E.D. Mich. 2016). He has failed to do so. For one thing, his assertion comes in a brief. In the related context of motions for summary judgment (which also ask whether a genuine issue of material fact has been raised), statements in briefs are insufficient to create the necessary factual dispute. *See Veeder v. Tri-Cap*, No. 17-cv-11690, 2018 WL 7254610, at *9 (E.D. Mich. Dec. 13, 2018), *Rep. & Rec. adopted by* 2019 WL 208281 (E.D. Mich. Jan. 15, 2019); *see also Bennett v. Louisville Metro Gov't*, 616 F. App'x 820, 823 (6th Cir. 2015) (statements in brief without supporting record evidence did not create a factual issue). Moreover, even if Plaintiff's statements appeared in an affidavit, they would still fail to create a dispute of material fact. *Cf. Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 955 (E.D. Ky.

2014) ("Without more, self-serving affidavits are insufficient to sustain a motion for summary judgment."); *LNV Corp. v. Gebhardt*, No. 3:12–CV–468, 2014 WL 1092109, at *4 (E.D. Tenn. Mar. 18, 2014) ("While defendant argues that several of the signatures on the Note were forged, defendant has presented no evidence substantiating this claim other than her own affidavits, and it is well-established that such 'self-serving affidavits' are insufficient to sustain or avoid a motion for summary judgment." (citation omitted)). Consequently, refusing to hold a bench trial was not an error.

Second, regarding his waiver argument, Plaintiff is mistaken. Prison officials could not deny Grievance 147 based on his naming the wrong parties because there was no indication he had done so until he brought the present suit. Plaintiff's responses at each step of the grievance process failed to even hint that he had misnamed ARUS Marvin or that he had originally intended to name Defendant Bradley or any of the other defendants. (W.D. Mich. Case No. 17-10888, R. 16, PageID.96-97.) Further, Plaintiff is incorrect that prison officials "made a merits decision [on the Grievance] as it related to 'Arus Bradley.'" (W.D. Mich. Case No. 17-10888, R. 27, PageID.176.) Neither Bradley nor any of the other defendants were named in the official responses to Grievance 147. (W.D. Mich. Case No. 17-10888, R. 27, PageID.95-97.) Thus, defendants were not barred from relying on Plaintiff's failure to name them in the Grievance. As such, Plaintiff has not demonstrated any error that would justify reopening this matter.

Finally, Plaintiff's fourth and last argument is that the Western District addressed only his deliberate indifference and HIPAA claims, ignoring the rest. (R. 11, PageID.55.) This argument is based on a misunderstanding of the exhaustion requirement. As noted

13

above, Plaintiff had to properly exhaust claims through the grievance process in order to raise them in court. 42 U.S.C. § 1997e(a). Consequently, claims falling outside his grievances did not need to be addressed on the merits. The only claims plausibly included in any grievance (filed or unfiled) against Defendant Rider were the deliberate indifference and HIPAA claims. (W.D. Mich. Case No. 17-10888, R.19, PageID.139.) That is why the earlier Report didn't address the other claims—it didn't need to. For example, in various filings Plaintiff mentions a claim for First Amendment retaliation against Defendant Rider. *See* (W.D. Mich. Case No. 17-10888, R. 72, PageID.308.) And the complaint indeed includes that claim. (R. 1, PageID.8.) But because the factual undergirding for the claim—that Defendant was retaliating against Plaintiff for an earlier grievance, (*id.*)—is nowhere in the relevant grievance, it was not exhausted. Accordingly, the Western District did not ignore any claims.

### III. CONCLUSION

For the reasons above, I recommend that the Court **DENY** Plaintiff's motion to reopen claims. (R. 11.)

### IV. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 8, 2019                     S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 8, 2019                     By s/Kristen Castaneda
                                         Case Manager